**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HEATHER HULON, as Personal Representative                 Case No. 1:20-cv-01023-PLM
of ANTHONY HULON, Deceased,

     Plaintiff                                                              Hon. Paul L. Maloney

v

CITY OF LANSING, a municipal corporation,
BILLY WINDOM, EDGAR GUERRA,
TREVOR ALLMAN, CHARLES WRIGHT,
and GARY WORDEN, in their individual capacities,

     Defendants.

_____/

| | |
|---|---|
| BUCKFIRE LAW FIRM | ROSATI, SCHULTZ, JOPPICH & |
| Jennifer G. Damico (P51403) | AMTSBUECHLER, P.C. |
| Attorney for Plaintiff | Andrew J. Brege (P71474) |
| 29000 Inkster Road, Ste. 150 | Attorney for Defendants |
| Southfield, MI 48034 | 822 Centennial Way, Ste. 270 |
| (248) 569-4646 | Lansing, MI 48917 |
| jennifer@buckfirelaw.com | (517) 886-3800 |
| | abrege@rsjalaw.com |

_____/

**<u>DEFENDANT'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS (ECF NO. 20)</u>**
**<u>AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE</u>**
**<u>SECOND AMENDED COMPLAINT (ECF NO. 28)</u>**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................ii

INDEX OF AUTHORITIES ..........................................................................iii

    I.     Plaintiff's Count V "ratification theory" fails to state any viable claim and must be dismissed. .............................................................. 1

    II.    Plaintiff's proposed Second Amended Complaint does not correct her inadequacies making the proposed amendment futile......................... 5

CONCLUSION ........................................................................................... 9

## INDEX OF AUTHORITIES

**Cases**

*Crawford v. Roane*, 53 F.3d 750 (6th Cir. 1995)............................................................5

*Daniels v. City of Columbus*, No. C2–00–562, 2002 WL 484622 (S.D. Ohio Feb. 20, 2002)............................................................2

*Foman v. Davis*, 371 U.S. 178 (1962)............................................................5

*Greenlee v. Miami Twp, Ohio*, No. 3:14-CV-173, 2015 WL 631130 (S.D. Ohio Feb. 12, 2015)............................................................2

*Head v. Jellico Hous. Auth.,* 870 F.2d 1117 (6th Cir. 1989) ............................................................6

*Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985) ............................................................1

*Meirs v. Ottawa County*, 821 F. App'x 445 (6th Cir. 2020)............................................................2, 3, 9

*Otero v. Wood*, 316 F. Supp. 2d 612 (S.D. Ohio 2004)............................................................2

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ............................................................1, 2

*Pineda v. Hamilton Cty., Ohio*, 977 F.3d 483 (6th Cir. 2020) ............................................................2, 3, 9

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011)............................................................4

*Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417 (6th Cir. 2000)............................................................5

*Rush v. City of Mansfield*, 771 F. Supp. 2d 827 (N.D. Ohio 2011) ............................................................2

*Spalding v. Eaton Cty.*, No. 1:18-CV-819, 2019 WL 4126467 (W.D. Mich. Aug. 30, 2019) ............................................................8

*Swans v. City of Lansing*, 65 F. Supp. 2d 625 (W.D. Mich. 1998)............................................................7

*Vine v. Cty. of Ingham*, 884 F. Supp. 1153 (W.D. Mich. 1995)............................................................8

*White v. Emergency Medicine Billing & Coding Co.*, No. 11-14207, 2013 WL 4551919 (E.D. Mich. Aug. 28, 2013) ............................................................6

*Wright v. City of Canton*, 138 F. Supp. 2d 955 (N.D. Ohio 2001) ............................................................1, 2

**Federal Court Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................5, 6, 9

Fed. R. Civ. P. 15(a)(2) ........................................................................... 5, 6

Fed. R. Civ. P. 15(c)................................................................................. 1

Fed. R. Civ. P. 56..................................................................................... 4

iv

In response to *Plaintiff's Response to Defendants' 12(b)(6) Motion -and- Plaintiff's Motion for Leave to File Second Amended Complaint* (ECF No. 28), this Court should grant Defendants' Motions to Dismiss (ECF No. 20) for all the reasons stated in their original motion[1], as well as these points:

## I.   PLAINTIFF'S COUNT V "RATIFICATION THEORY" FAILS TO STATE ANY VIABLE CLAIM AND MUST BE DISMISSED.

While Plaintiff concedes that Defendant City of Lansing "is not liable for the conduct of its non-policy making employees," Plaintiff still maintains that she has pled sufficient factual allegations to establish "the failure to conduct an adequate investigation by Defendant City, through the decisions of its final policymakers – Schor and Green – is [somehow] the official policy of the Defendant City." (ECF No. 28, PageID.299) (original emphasis omitted)

Plaintiff's response tries to revive her Count V argument by alleging "[i]t is the second method of ratification upon which [she] relies" and that "[r]atification may occur when a policymaker fails to *meaningfully* investigate the acts of the officer."[2] (ECF No. 28, PageID.298) (emphasis added) (citing ***Wright v. City of Canton***, 138 F. Supp. 2d 955, 966 (N.D. Ohio 2001), and ***Marchese v. Lucas***, 758 F.2d 181, 188 (6th Cir. 1985)). Plaintiff also relies on ***Pembaur v. City of Cincinnati***, 475 U.S. 469 (1986) and several cases from other district courts in this Circuit to allege that a plaintiff can show "ratification" by offering "evidence that a municipality inadequately investigated an alleged

---

[1] In the spirit of judicial economy and under Fed. R. Civ. P. 15(c), Defendants incorporate by reference and rely on the arguments set forth in their Motion to Dismiss and Brief in Support.

[2] Plaintiff's response brief explains the first method of ratification, but does not explain the second method of ratification she relies on.

1

constitutional violation." (ECF No. 28, PageID.299) (citing **Rush v. City of Mansfield**, 771 F. Supp. 2d 827, 861-62 (N.D. Ohio 2011); **Wright v. City of Canton**, *supra*; and **Otero v. Wood**, 316 F. Supp. 2d 612, 627-28 (S.D. Ohio 2004)).

However, Plaintiff's reliance on these cases is entirely unproductive. As Plaintiff points out, the Supreme Court in 1986 did indeed allow findings of municipal liability "for a single decision by municipal policymakers *under appropriate circumstances*." **Pembaur**, *supra* at 480 (emphasis added). **Pembaur** itself did not involve an allegation of a failure to investigate *after the fact* as presenting "appropriate circumstances" for single-act municipal liability.  Rather, as the Sixth Circuit has made clear in **Pineda v. Hamilton Cty., Ohio**, 977 F.3d 483, 495 (6th Cir. 2020), when a plaintiff attempts to establish municipal liability under the ratification-theory, "a *single* failure to investigate a single plaintiff's claim does not suffice."  See also **Meirs v. Ottawa Cnty.**, 821 F. App'x 445 (6th Cir. 2020).

All three Ohio *District Court* cases cited by Plaintiff, **Rush**, *supra*; **Wright**, *supra*; and **Otero**, *supra*, predate the binding precedent of **Pineda**, where the Sixth Circuit affirmatively rejected the legal basis upon which they were premised.  Further, other judges within those same Ohio Districts, even before having the issue affirmatively resolved by published Sixth Circuit authority, had already rejected the basis of those decisions since "once an individual's rights have been violated, a subsequent failure to conduct a meaningful investigation cannot logically be the 'moving force' behind the alleged constitutional deprivation." **Daniels v. City of Columbus**, No. C2–00–562, 2002 WL 484622 (S.D. Ohio Feb. 20, 2002); see also **Greenlee v. Miami Twp, Ohio**, No. 3:14-CV-173, 2015 WL 631130, at *8, n. 5 (S.D. Ohio Feb. 12, 2015), aff'd (Sept. 23, 2015)

2

He goes around.

("To the extent that **Wright** [*supra*], cited by Plaintiffs, failed to make this distinction, this Court believes that **Wright** was wrongly decided.").

As the case law she cites from both the District Courts of Ohio not only pre-dates the Sixth Circuit's well-reasoned authority in **Pineda** and **Meirs**, but also is not controlling authority on this Court or anywhere else within the Sixth Circuit, she also attempts to factually distinguish her claim from **Pineda**. This "distinction" from **Pineda**, which she claims rests on the factual distinction that there was no evidence in **Pineda** that the sheriff even knew about the incident, and thus, could not have failed to investigate it, misses the point entirely.  (ECF No. 28, PageID.300)   The Court in **Pineda** did not rely on this apparent factual issue at all in making it clear that:

> "a claim based on inadequate investigation" requires "not only an inadequate investigation in this instance," but also "a clear and persistent pattern of violations" in earlier instances. That is, "there must be multiple earlier inadequate investigations and they must concern comparable claims."

**Pineda**, *supra* at 495 [internal citations omitted].  That is, it did not matter whether the sheriff in that case failed to investigate that incident, since there was no allegation or even evidence of a pattern of failing to investigate "multiple comparable claims" predating the incident at issue.  And while Plaintiff manages to procure this single, irrelevant factual distinction to **Pineda**, she neglects to even address **Meirs** – the Sixth Circuit's most recent and controlling authority that explicitly rejects this "second ratification theory" based on a single allegation of failure to investigate without multiple, prior instances of comparable claims that were similarly not investigated.

Whether or not Plaintiff chooses to label Defendants' alleged investigation as "inadequate" or "meaningless," this Court must take judicial notice of the fact that both the

Michigan State Police ("MSP") and the Attorney General's office ("AG") have conducted complete and thorough investigations into Mr. Hulon's death.[3] This is a fact that Defendants have not only already explained in their Motion to Dismiss, but also one that Plaintiff has been well aware of herself since she first filed this suit in question.[4] Additionally, this fact – that the matter was under investigation by the Michigan State Police – was made public by the City of Lansing in its April 11, 2020 press release, attached as Exhibit A, in which the City explicitly stated the matter was "pending a Michigan State Police investigation."[5]  The Court can take judicial notice of the common practice of police departments requesting outside agencies to conduct investigations of their own, which both the Amended Complaint and public record demonstrate occurred here.  Therefore, even if the legal basis upon which Plaintiff and the three non-binding cases she relies on had not already been thoroughly rejected by the Sixth Circuit, the facts as alleged would not even be sufficient to justify a claim for failure-to-investigate-based ratification, as Plaintiff cannot in good faith even assert that there was a failure to investigate.

Plaintiff has failed, both legally and factually, to establish a plausible claim in Count V, and therefore, it must be dismissed.

---

[3] Michigan Attorney General, *AG Nessel Announces Findings in Two In-Custody Death Investigation*, YOUTUBE (Apr. 9, 2021), https://www.youtube.com/watch?v=DE73pUgBfU0 (at 22:45, announcing that there is insufficient evidence to justify criminal charges against the officers involved in Hulon's death, and, generally, explaining in detail why the officers' actions were reasonable.)

[4] *See* ECF No. 21, PageID.139, n. 9.  This is public record.

[5] Given that the press release is explicitly relied on and referenced to in Plaintiff's Amended Complaint, ECF No. 14, at ¶ 133, PageID.92, use of this document, a public record, does not convert this case into one for summary judgment under Fed. R. Civ. P. 56.  *See **Rondigo, L.L.C. v. Twp. of Richmond***, 641 F.3d 673, 681 (6th Cir. 2011).

**II.   PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT DOES NOT CORRECT HER INADEQUACIES MAKING THE PROPOSED AMENDMENT FUTILE.**

Plaintiff's motion alternatively seeks to file a proposed second amended complaint in support of her Count V claim that "adds more specific detailed allegations that *were not known to Plaintiff at the time of filing her Original and First Amended Complaints*." (ECF No. 28, PageID.302) (emphasis added). These added allegations are apparently solely drawn from a March 17, 2021 Lansing State Journal ("LSJ") news article. (ECF No. 28-2, PageID.351-356)[6] However, this proposed amendment would be futile because her Count V claim would still fail to survive Fed. R. Civ. P. 12(b)(6). Thus, her Motion should be denied.

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* However, a court should deny a motion to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile." ***Crawford v. Roane***, 53 F.3d 750, 753 (6th Cir. 1995) (internal citations omitted); *see also* ***Foman v. Davis***, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if [the amendment] could not withstand a Rule 12(b)(6) motion to dismiss." ***Rose v. Hartford Underwriters Ins. Co***., 203 F.3d 417, 420 (6th Cir. 2000). "[I]f the district court concludes that 'the pleading as amended could not withstand a motion to dismiss,' the court may deny the motion to amend, thereby saving the parties and the court the expense of having to confront a claim doomed to failure from

---

[6] Plaintiff cannot in good faith assert that the previous lawsuits filed against the City of Lansing were unavailable to her prior to filing the lawsuit.

the onset." *White v. Emergency Medicine Billing & Coding Co.*, No. 11-14207, 2013 WL 4551919, at *3 (E.D. Mich. Aug. 28, 2013) (quoting *Head v. Jellico Hous. Auth.,* 870 F.2d 1117, 1123 (6th Cir. 1989)).

Plaintiff's Motion and proposed second amended complaint reveals she is now trying to support her Count V argument with additional factual allegations solely drawn from a March 17, 2021 Lansing State Journal ("LSJ") article, as well as citations to four previous lawsuits against the City of Lansing. First, Plaintiff cites remarks given by Chief Daryl Green within the article discussing low staffing levels at the jail. (ECF No. 28-2, PageID.356) Based on these cherry-picked statements, Plaintiff asserts that "it was the policy of the City of Lansing to not investigate excessive force or wrongful death claims in the jail because it was severely understaffed and was operating at the 'lowest staffing possible.'" (ECF No. 28, PageID.303-304)

However, Plaintiff's newfound reliance on the notion that "staffing shortages" at the City of Lansing Jail somehow creates enough of a causal connection to Hulon's incident is a reach that stretches too far to rectify any 12(b)(6) requirement, let alone any Rule 15(a)(2) amendment.[7] Plaintiff merely suggesting that low staffing levels at the jail are somehow itself indicative of a constitutional violation or make it "foreseeable that constitutional violations would occur" (ECF No. 28, PageID.304) is the type of conclusory allegation that Rule 12(b)(6)'s plausibility requirement is designed to exclude.  Further, Plaintiff makes absolutely no connection between an alleged low staffing level and what

---

[7] If Plaintiff relies on the "persistently low staffing levels prior to Hulon's death" to also allege that "the City was deliberately indifferent to its failure to hire, train, maintain and supervise detention officers" (ECF No. 28, PageID.304), such an argument is couched within, and more properly addressed under Plaintiff's Count II "failure to train" theory.

occurred on the night of April 11, 2020 – if anything, the fact that four of the five individually named Defendants were officers working at the City's lock up facility would seem to reject any claim there were inadequate staff present.

Second, this same LSJ article outlines how "[a] lawsuit has followed nearly every death in the lockup" and lists in detail six incidents in the jail spanning over a 30-year period that led to an inmate's death, including Hulon's. (ECF No. 28-2, PageID.354). Plaintiff, in turn, now cites and relies on four[8] of these incidents in her proposed second amended complaint to allege that "these prior incidents support her claim that Defendant Lansing has a 'custom' or 'policy' of systematically failing to investigate. (ECF No. 28, PageID.304-305)

But Plaintiff's reliance on these prior incidents to establish a pattern of inadequate investigation is misleading and unfounded. Each of these prior instances outlined in the March 17, 2021 LSJ article and subsequently pasted into Plaintiff's proposed second amended complaint did <u>not</u> involve similar or comparable circumstances, as required by the Sixth Circuit.  The distinction regarding the Swans matter, ***Swans v. City of Lansing***, 65 F. Supp. 2d 625 (W.D. Mich. 1998), was already addressed by Defendant in its initial motion.  (ECF No. 21, PageID.137, n. 8).  As to the Spalding matter, which Plaintiff admits does not even involve the claim of an inmate who died *in custody of the City of Lansing or at the City Jail*, there is no arguable or plausible comparison, and this Court can take judicial notice of the facts of that matter as they have been described in ***Spalding v.***

---

[8] Plaintiff's brief and proposed second amended complaint conveniently fails to mention one of the six incidents also mentioned in the LSJ article – involving inmate Christopher Phillips in 2015 – where "[h]is family filed a lawsuit, but a judge dismissed it because the facts 'could not lead a rational trier of fact to find that Defendants' conduct was the 'most immediate, efficient, and direct cause' of Phillips' death.'" *See* ECF No. 28-2, PageID354.

*Eaton Cty.*, No. 1:18-CV-819, 2019 WL 4126467 (W.D. Mich. Aug. 30, 2019) (Jonker, C.J.), as involving an individual claiming to have an infection and suffering from withdrawals who died at the Ingham County Jail.  The facts as asserted by Plaintiff regarding the Vine matter, and as more thoroughly addressed in Judge McKeague's opinion on the case, *Vine v. Cty. of Ingham*, 884 F. Supp. 1153, 1157 (W.D. Mich. 1995), clearly demonstrate that it is not comparable – or even arguably comparable – to claim an individual suspected of intoxication who was left passed out for numerous hours and found unresponsive to the allegations in the present case.  Additionally, the Court in *Vines* explicitly rejected the Plaintiff's claims of municipal liability.  See *Vines*, *supra* at 1126-1165.[9]  Finally, Plaintiff's inclusion of a reference to the Joseph Manning matter, which Plaintiff asserts involved in individual that attempted suicide and was provided no medical treatment, cannot possibly support her theory of a pattern of failing to investigate prior, similar instances to what occurred based on her allegations.  Further, and again relying on public record only so as not to raise Rule 56 concerns, it is obvious that the Manning matter *did* result in an internal investigation, the results of which are open to the public and readily available on the City of Lansing's website at https://www.lansingmi.gov/DocumentCenter/View/1006/Internal-Board-of-Review-on-the-In-Custody-Death-of-Joseph-Manning-PDF?bidId= (last accessed April 27, 2021).[10]

---

[9] Since this is a published opinion where the Court found that there was no municipal liability against the City of Lansing, it is difficult how Plaintiff can assert in good faith that it presents a basis to establish municipal liability against the City of Lansing.
[10] Given the Joseph Manning investigation results are public record, it is difficult to discern how Plaintiff can in good faith even make the assertion that she has "information and belief" that no investigation occurred.

Other than the fact that these incidents all involved an individual's death while in custody (albeit, in Spalding, not even the City of Lansing's custody), Plaintiff never tries to discern how each of these unrelated incidents amount to a "series of investigative failures" or establish a "clear and consistent pattern" of failing to investigating comparable claim as required in this Circuit under ***Pineda***, ***Meirs***, and the cases cited therein. Plaintiff merely appending the same conclusory allegation – based "upon information and belief"[11] – at the end of each alleged incident does not resolve these factual deficiencies or plausibly allow this Court to infer that an "inadequate investigation" of any sort occurred under any of these particular instances, or that these incidents are even comparable.

Given that Plaintiff's proposed amendment would fail to survive Rule 12(b)(6) analysis, this Court should exercise its discretion and deny Plaintiff's Motion for Leave to File a Second Amended Complaint because Plaintiff's Count V.  Neither Plaintiff's operative, First Amended Complaint (ECF No. 14), nor her proposed second amended complaint (ECF No. 28-1) satisfy the "stringent pleading requirements" (ECF No. 28, PageID.284) under Fed. R. Civ. P. 12(b)(6) to support her Count V "ratification theory" claim. Therefore, Plaintiff's Count V claim must be dismissed in its entirety, and her motion to amend a second time denied.

## CONCLUSION

For all the reasons stated above, as well as in their original motion and brief, these Defendants respectfully request that this Court grant their Motion to Dismiss (ECF No.

---

[11] *See* ECF No. 28, PageID.305 ("[ ] Upon information and belief, the City failed to conduct a meaningful investigation meant to uncover the truth and no officers were disciplined as a result.")

20), deny Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 28), and award any other relief that the court may deem just and proper.

Respectfully submitted,

ROSATI SCHULTZ JOPPICH &
AMTSBUECHLER, PC

/s/ Andrew J. Brege
Andrew J. Brege (P71474)
Attorney for City of Lansing Defendants
822 Centennial Way, Ste. 270
Lansing, MI 48917
(517) 886-3800
Dated: April 27, 2021                    abrege@rsjalaw.com

## PROOF OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LCivR 7.2

I hereby certify that on April 27, 2021, I electronically filed this paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the parties/attorneys of record identified in the caption. I also certify that this Reply Brief was created using Microsoft Word 2016, and that the Reply Brief contains 2,798 words in the text and footnotes, exclusive of the caption, index, signatures, and this certificate.

Respectfully submitted,

ROSATI SCHULTZ JOPPICH &
AMTSBUECHLER, PC

/s/ Andrew J. Brege
Andrew J. Brege (P71474)
Attorney for City of Lansing Defendants
822 Centennial Way, Ste. 270
Lansing, MI 48917
(517) 886-3800
Dated: April 27, 2021                    abrege@rsjalaw.com

10